UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NORTH CARLONIA.

AT RALEIGH

FILED

FEB 13 2023

PETER A MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

CIVIL ACTION No. 5:23-Ct-3044-FL

---

DAKOTA WATERS

    PLAINTIFF Pro'se

    - V -

UNITED STATES OF AMERICA,

DR. J. HALBSGUT, P.H.D.,

DTS MS. JAMES, DTS MS. HAMIETT,

DTS. MR. HARMAN,

SIA OFFICER MULLINS,

SIS Lt. ROBINSON,

ASST. WARDEN FLOWERS,

ASST. WARDEN LINN,

CAPTAIN MARTIN,

FEDERAL BUREAU OF PRISONS,

    DEFENDANTS, et, Al;

---

## JURISDICTON

PRISONER CIVIL RIGHTS U.S. 42 §§ 1983
FEDERAL TORT PERSONAL INJURY NEGLIGENCE
28 USCS §§ 2671 AND BIVENS CLAIMS
STATE PENDENT JURISDICTION OF TORT FOR
PROFESSIONAL MAIPRATICE AND NEGLIGENCE
8TH AMENDMENT Violations

## DEMAND FOR JURY TRIAL

## NATURE OF COMPLAINT

PLAINTIFF's (7) COUNT COMPLAINT NAMING 10 DEFENDANTS, RAISES CLAIM(S)
OF FEDERAL TORT OF NEGLIGENCE RESULTING IN PHYSICAL PERSONAL INJURY AND A
VIOLATION OF THE 8TH AMENDMENT OF CRUEL AND UNUSUAL TREATMENT, A deliBERATE
INDIFFERENCE TO A MEDICAL NEED, STATE PENDENT TORT FOR PROFESSIONAL NEGLIGENCE
PROFESSIONAL MAIPRACTICE; BIVENS CLAIMS CONSTITUTIONAL DEPRIVATIONS.

# TERMS AND DEFINITIONS

1.) (R. D. A. P.) "RESIDENTIAL DRUG AND ALCOHOL TREATMENT PROGRAM, A 3-PHASE IN-PATIENT TREATMENT PROGRAM UNIT OPERATED BY THE DEFENDANT(S) FEDERAL BUREAU OF PRISONS AT THE FEDERAL CORRECTIONAL INSTITUTION BUTNER MEDIUM 1 IN BUTNER NORTH CAROLINA.

2.) D.T.S. "DRUG TREATMENT SPECIALIST" WHO SERVE AS THE DRUG TREATMENT PROGRAM COUNSELORS AND FACILITATORS, AS EMPLOYEES OF THE FEDERAL BUREAU OF PRISONS, OTHERWISE GOVERNMENT EMPLOYEES.

3.) S.I.A. "SECURITY AND INVESTIGATIONS ADMINISTRATOR", AS THE CHIEF INVESTIGATOR FOR THE PRISON FACILITY UNDER direct SUPERVISION OF THE FACILITY WARDEN, TO INVESTIGATE MATTERS INVOLVING STAFF MISCONDUCT.

4.) S.I.S. "SECURITY AND INVESTIGATION SERVICES" OFFICERS WHO ARE RESPONSIBLE FOR INVESTIGATION OF ANY INCIDENTS INVOLVING THE ORDERLY RUNNING OF THE FACILITY, SAFETY AND OR MISCONDUCT OF PRISONERS WITHIN FEDERAL CORRECTIONAL FACILITIES AS WELL AS ISSUES AFFECTING THE SECURITY OF THE FACILITY AND PRISONER DISCIPLINARY MATTERS.

5.) ASST. WARDENS, RESPONSIBLE FOR THE SUPERVISION OF PRISON EMPLOYEES.

6.) CAPTAINS, RESPONSIBLE FOR DIRECT SUPERVISION OF CORRECTIONS OFFICERS AND GENERAL PRISON FACILITY OPERATIONS.

7.) R.D.A.P. COORDINATOR, RESPONSIBLE FOR THE "CLINICAL TREATMENT" OF PRISONERS IN THE "RESIDENTIAL DRUG AND ALCOHOL TREATMENT PROGRAM"

# PARTIES FOR SERVICE OF PROCESS

1.) PLAINTIFF, DAKOTA WATERS, REG, NO. 53973-074, FCI BUTNER 1 PO BOX 1000 BUTNER NC. 27509

2.) DEFENDANT, DR. J. HALBSGUT P.H.D. (R.D.A.P. CLINICAL COORDINATOR) F.C.I. BUTNER 1, PO BOX 1000 BUTNER, NC. 27509

3.) DTS MS. JAMES (R.D.A.P. DRUG TREATMENT SPECIALIST) F.C.I. BUTNER 1 PO BOX 1000 BUTNER, NC. 27509

4.) DTS MS. HAMLETT (R.D.A.P. DRUG TREATMENT SPECIALIST) F.C.I. BUTNER 1 PO BOX 1000 BUTNER, NC. 27509

5.) DTS MR. HARMAN (R.D.A.P. DRUG TREATMENT SPECIALIST) F.C.I. BUTNER 1 PO BOX 1000 BUTNER, NC. 27509

6.) SIA CORRECTIONS OFFICER MULLINS, F.C.I. BUTNER 1, PO BOX 1000 BUTNER, NC. 27509

7.) SIS Lt, ROBINSON, F.CI. BUTNER 1, PO BOX 1000 BUTNER NC. 27509

8.) ASST. WARDEN FLOWERS, FCI BUTNER 1, PO BOX 1000 BUTNER, NC. 27509

9.) ASST. WARDEN LINN, FCI BUTNER 1, PO BOX 1000 BUTNER, NC. 27509

10.) UNITED STATES OF AMERICA, FEDERAL BUREAU OF PRISONS, THE HON. MERRICK GARLAND U.S. ATTORNEY GENERAL 950 PENNSYLVANIA AVE. N.W. WASHINGTON DC. 20530, GENERAL COUNSEL FEDERAL BUREAU OF PRISONS 320 1ST STREET N.W. WASHINGTON, DC. 20534

## PLAINTIFF'S STATEMENT OF FACTS

1.) THE PLAINTIFF IS A 30 YEAR OLD MALE AND A FATHER OF 3 YOUNG CHILDREN, WITH A VERY LIMITED CRIMINAL HISTORY CONSISTING OF MINOR MISDEMEANOR OFFENSES WHICH ALL STEM FROM AND ARE MOTIVATED by HIS STRUGGLES WITH DRUG ADDICTION, FOR WHICH HE HAS NEVER RECEIVED ANY COMPREHENSIVE DRUG TREATMENT. HE IS CURRENTLY SERVING A 60 MONTH FEDERAL PRISON SENTENCE FOR A NON-VIOLENT FELONY DRUG OFFENSE AS (HIS FIRST AND ONLY FELONY CONVICTION) IN THE EASTERN DISTRICT OF TENNESSEE FOR WHICH HIS PROJECTED RELEASE DATE IS SCHEDULED FOR ( 10/01/2023 )

2.) THE FEDERAL SENTENCING COURT "RECOMMENDED SPECIFICALLY" "THAT THE FEDERAL BUREAU OF PRISON PROVIDE THE PLAINTIFF THE OPPORTUNITY TO PARTICIPATE IN A COMPLETE THE BUREAU OF PRISON'S COMPREHENSIVE DRUG TREATMENT PROGRAM KNOWN AS (R.D.A.P.), ACCORDINGLY THE PLAINTIFF WAS SUBSEQUENTLY CLASSIFIED BY THE BUREAU OF PRISON'S UNIT CASE MANAGEMENT TEAM, TO PARTICIPATE IN AND COMPLETE THE "R.D.A.P. PROGRAM WITHIN THE BUREAU OF PRISONS, UPON WHICH THIS PLAINTIFF/PRISONER APPLIED FOR AND WAS ACCEPTED INTO THE R.D.A.P. PROGRAM AND BEGAN HIS TREATMENT ON JUNE 7, 2021 AT F.C.I. BUTNER I IN BUTNER NORTH CAROLINA, CONSISTING OF A 3-PHASE IN-PATIENT RESIDENTIAL TREATMENT PROGRAM, UNDER THE DIRECTION OF THE CLINICAL COORDINATOR (DEFENDANT DR. J. HAIBSGUT, P.H.D.) AND 3 DRUG TREATMENT SPECIALIST (D.T.S. MS. JAMES, MS. HAMLETT AND MR. HARMAN - DEFENDANTS) UNDER THE EMPLOY OF THE FEDERAL BUREAU OF PRISON OF THE U.S. DEPARTMENT OF JUSTICE ON BEHALF OF THE UNITED STATES OF AMERICA.

(4)

3.) Between the period of time when the plaintiff first entered the (R.D.A.P.) Treatment Program with approximately ( ) other prisoners in a small self contained program - combination in-patient housing unit, from June 7, 2021 up to October 20th 2021 (the dates of the incident which gives - -rise to this civil action) for the first 4 months of the plaintiff's time in the RDAP treatment program/unit, (the defendant Dr. J. Haibsgut, P.H.D.) as the R.D.A.P. Program's Clinical Director/Clinical Coordinator engaged in highly questionable patterns and a series of clinical unprofessional and professionally unethical conduct in her clinical management duties and direct clinical patient care, in which she knowingly created a very dangerous volatile hostile treatment unit living and treatment type of environment. Her personal and professional misconduct eventually lead to numerous incidents of violence amoung prisoner-program participants resulting in phsical injuries, including a violent physical attach and injury upon the plaintiff, whereby her negligent acts or the failure(s) to act violated her professional ethics and licensed code of conduct constituting professional malpractice professional negligence as well as violations of and failure to follow the rules of her federal employment training policies and mandated security protocals upon which she was required to follow as an employee of the federal bureau of prisons. Where throughout this initial 4 month period, the plaintiff reported Dr. J. Haibsgut's misconduct to prison officials and those bureau of prison employees named in this suit, but initially for the 4 months between June 7, 2021 through October 20, 2021, none of the named prison officials subject to this suit took any action to address the known threats to the safety of this plaintiff or other prisoners.

(5)

4.) FOR THE FIRST FOUR MONTHS THAT THE PLAINTIFF WAS ENROLLED IN THE R.D.A.P TREATMENT PROGRAM HE WAS PROGESSING WITHOUT INCIDENT AND FOR ALL INTENTS AND PURPOSE, WAS DOING QUITE WELL, WITH NO TREATMENT FAILURES AND/OR BEHAVORIAL ISSUES ON RECORD; UNTIL ON 10/20/2021 (BELOW #5)

5.) THEN AFTER FOUR MONTHS OF TREATMENT, THE (DEFENDANT DR. J. HAIBSGUT) APPROACHED THE PLAINTIFF TO SAY (SHE) BELIEVED THE PLAINTIFF WAS INVOLVED WITH, OR KNEW OF OTHER PRISONERS (TREATMENT PROGRAM PARTICIPANTS) WHO WERE INVOLVED IN EITHER USING DRUGS OR SELLING DRUGS WITH-IN THE TREATMENT PROGRAM HOUSING UNIT AT THE PRISON, AND THEN (THE DEFENDANT DR. J. HAIBSGUT, Phd) GAVE THE (PLAINTIFF) A DIRECT ORDER "THAT HE (THE PLAINTIFF) HAD TO EXPOSE" POINT-OUT AND BRING UP OR IDENTIFY ANY FELLOW PRISONER (S) / PROGRAM PARTICIPANTS AT THE TREATMENT PROGRAM'S DAILY MORNING MEETING HELD THE NEXT FOLLOWING DAY, OR " "HE WOULD BE TERMINATED AND REMOVED FROM THE TREATMENT PROGRAM IMMEDIATELY (BY HER)" IF HE FAILED TO FOLLOW HER ORDER. "  IT SHOULD BE NOTED THAT IT IS AGAINST BUREAU OF PRISON POLICY TO COMPEL A FEDERAL PRISONER TO REPORT THE MISCONDUCT OF ANOTHER PRISONER, NOR IS THERE ANY COMPANION PUBLIC LAW THAT COMPEL'S WITH PENALTY FOR ANY CITIZEN TO REPORT A CRIME, ADDITIONALLY, ANY MATTER INVOLVING FEDERAL INMATES OR PRISONER'S INVOLVED IN ILLICIT DRUG ACTIVITY IS NOT TO BE HANDLED by OR INVESTIGATED by CIVILIAN EMPLOYEES, BUT BY POLICY, MUST BE REFERRED TO AND ADDRESSED BY PRISON SECURITY STAFF OR PRISON GAURDS, NOT BY ANY THERAPIST OR CIVILIAN EMPLOYEE, SUCH PROCEDURE AND PROTOCALS WERE MADE KNOWN TO THE DEFENDANT (DR. J. HAIBSGUT, P.h.d.) DURING HER TRAINING AND EMPLOYEE ORIENTATION, THE OBVIOUS IMPIACTION OF REQUIRING ONE PRISONER "TO TELL ON ANOTHER PRISONER" OPENLY IN PUBLIC, IN A VIOLENT DANGEROUS PRISON ENVIRONMENT CAN, AND IN THIS CASE, RESULTED IN VIOLENCE AND REAL INJURY TO THIS PLAINTIFF.

(6)

6.) THE DEFENDANT (DR. J. HAIBSGUT, P.h.d.) GAVE THE PLAINTIFF SUCH ORDER AND MANDATE, described IN (PAR. #5) ON 10/20/2021, AT APPROXIMATELY 10:45 AM, Upon WHICH FEARING UNDER THREAT THAT He Would BE "TERMINATED FROM TREATMENT", THAT He Would FOR FEIT THE ONE YEAR SENTENCE REDUCTION HE Would OTHERWISE RECEIVE FOR COMPLETING THE TREATMENT PROGRAM AS WELL AS THE Idea OF LETTING DOWN HIS FAMILY AND CHILDREN, THE PLAINTIFF FELT HE HAD No CHOICE BUT TO FOLLOW (DR. J. HAIBSGUT, PhD)'S ORDER AND SO AT ABOUT 11:30 AM THAT SAME DAY ON 10/20/2021, THE PLAINTIFF WAS FORCED TO APPROACH A FELLOW PRISONER BY THE NAME OF (FELIX Alvardo) WHO WAS Also PARTICIPATING IN THE TREATMENT PROGRAM; AND INFORMED HIM' THAT "DR. J. HAIBSGUT WAS FORCING HIM (THE PLAINTIFF) To Report HIS' (FELIX Alvardo's DRUG ACTIVITIES) AT THE NEXT MORNING'S TREATMENT UNIT COMMUNITY MEETING", UPON WHICH INMATE (FELIX Alvarado) REPLIED BY WARNING AND THREATENING THE PLAINTIFF [QUOTE: "I'll BUST YOUR FUCKIN HEAD WITH A "LOCK IN THE SOCK" EN-QUOTE :] NOTE "A LOCK IN THE SOCK" IS A Common DANGEROUS WEAPON ROUTINELY Used BY PRISONERS To ATTACK Fellow PRISONERS OFTEN KNOWN To FRACTURE SKULLS, BREAK BONES AND HAS Caused THE DEATH, BLINDNESS AND THE MAIMING OF HUNDREDS OF PRISONERS WITHIN THE FEDERAL PRISON System, WHERE THE ATTACKER INSERTS A HEAVY WEIGHTED METAL COMBINATION LOCK INSIDE A SOCK SO AS TO SWING AND VIOLENTLY ASSAULT THEIR INTENDED VICTIM by STRICKING REPEATED VIOLENT VICIOUS BLOWS ABOUT THE HEAD AND FACE, WHICH IS CONSIDERED AND TREATED AS A "DANGEROUS" "DEADLY" WEAPON. THIS THREAT WAS MADE IN THE PRESENCE OF A FELLOW PRISONER - WITNESS BY THE NAME OF (GARY LESTER).

7.) IMMEDIATELY AFTER BEING THREATENED by (FELIX ALVARDO) WHO I HAD CONFRONTED FOLLOWING THE ORDER OF (DR. J. HAIBSGUT, P.h.d.) JUST A Few MINUTES LATER AT APPROXIMATELY 11:45 AM THAT SAME MORNING 10/20/2021

(7)

I REPORTED RIGHT BACK TO (DR. J. HALBSGUT, P.h.D.) FEARING FOR MY IMMEDIATE LIFE AND SAFETY, TOGETHER WITH THE EYE WITNESS (INMATE GARY LESTER) I APPROACHED (DR. J. HALBSGUT, P.h.D.) WHO WAS IN THE COMPANY OF All (3) OF THE OTHER TREATMENT SPECIALIST(S), (DTS. MS. JAMES), (DTS MS. HAMLETT) AND (DTS MR. HARMAN) AND NOTIFIED All OF THOSE TREATMENT PROGRAM EMPLOYEES (PARTICULARLY DR. J. HALBSGUT, P.h.D.) THAT I HAD COMPLIED WITH THE ORDER OF (DR. HALBSGUT, P.h.D.) AND CONFRONTED INMATE (FELIX ALVARDO) ABOUT HIS DRUG ACTIVITIES WITHIN THE TREATMENT PROGRAM UNIT, AND THEN QUOTED WORD FOR WORD THE EXACT EXPLICIT THREAT THAT (FELIX ALVARADO) MADE AGAINST ME THAT [QUOTE: " "I'll BUST YOUR FUCKIN HEAD WITH A LOCK IN THE SOCK " END-QUOTE:] WHICH I CLEARLY STATED THAT I FEARED FOR MY LIFE AND SAFETY, THAT, THAT THREAT ENDANGERED MY IMMEDIATE SAFETY AND DID SO IN THE PRESENCE OF THE WITNESS TO THIS THREAT (GARY LESTER) WHO CONFIRMED HIS WITNESSING THE THREAT. RATHER THAN CONTACT THE PRISON'S SECURITY OFFICERS (SIS) AS HER EMPLOYEE TRAINING AND POLICY PROTOCALS REQUIRE, DR. HALBSGUT'S IMMEDIATE REPLY AND RESPONSE WAS A DISMISSIVE GESTURE by TELLING THE PLAINTIFF "DON'T WORRY", "I'll TAKE CARE OF IT" WHICH WAS SAID IN THE COMPANY OF All 3 OF THE OTHER "DTS" DRUG TREATMENT SPECIALIST OF THE R. D. A. P. TREATMENT PROGRAM, THAT WAS AT 11:45 AM ON 10/20/2021.

8.) APPROXIMATELY ONE HOUR LATER AT ABOUT 1:00pm THAT SAME DAY 10/20/21, WHEN IT APPEARED THAT (THE DEFENDANT DR. J. HALBSGUT, P.h.D.) HAD NOT DONE ANYTHING ABOUT THE KNOWN THREAT TO THE PLAINTIFF'S LIFE AND SAFETY, THE PLAINTIFF WENT TO SPEAK WITH THE (DTS MS. JAMES) WHO IS THE "DRUG TREATMENT SPECIALIST" - THERAPIST/COUNSELOR ASSIGNED TO HIM AND TOLD HER THAT HE DID NOT FEEL SAFE, THAT HE FEARED FOR HIS LIFE AND HIS SAFETY UNDER THE THREAT MADE BY FELLOW PRISONER (FELIX ALVARDO) AND THAT HE WAS WORRIED THAT (FELIX ALVARDO) WAS GOING TO FOLLOW THROUGH ON HIS EXPRESSED THREAT...

(8)

THE PLAINTIFF ALSO TOLD (DTS MS. JAMES) THAT MULTIPLE INMATES WITH-IN THE TREATMENT PROGRAM UNIT WERE WARNING THE PLAINTIFF THAT INMATE (FELIX AIVARDO) WHO HAD PREVIOUSLY THREATENED THE PLAINTIFF "WAS GOING AROUND THE TREATMENT UNIT TELLING OTHER PRISONERS "THE PLAINTIFF IS A RAT" A SNITCH" AND THAT "HE'S GONNA FUCK HIM (DAKOTA WATERS-THE PLAINTIFF) UP" THE PLAINTIFF FURTHER COMPLAINED TO (DTS MS. JAMES) THAT (HE) DID NOT THINK THAT (DEFENDANT DR. J. HAIBSEUT, P.h.d.) WAS DOING ANYTHING ABOUT THE THREAT TO HIS SAFETY OR TAKING IT SERIOUS ENOUGH, UPON WHICH (DEFENDANT DTS MS. JAMES) REPLIED "IT WILL BE TAKEN CARE OF THE SAME AS ANY OTHER INCIDENT OF PRISONER VIOLENCE OR THREATS BY INMATES IN THE TREATMENT PROGRAM UNIT".

9.) HOWEVER, INFACT NO ACTION WAS TAKEN BY ANY OF THE 4 TREATMENT PROGRAM STAFF WHO WERE MADE AWARE OF THE THREAT, NOT (DR. J. HAIBSGUT, P.h.d.) NOT (DTS MS. JAMES), (DTS MS. HAMLETT) OR (DTS MR. HARMIN) WHERE All 4 WENT HOME FOR THE DAY AT 3 PM ON 10/20/2021 (THE SAME DAY OF THE THREAT) HAVING NEVER REPORTED THE MATTER TO THE PRISON'S SECURITY STAFF AS THE PRISON POLICY AND THEIR EMPLOYEE TRAINING AND PROTOCALS REQUIRE, BUT IN FACT WENT HOME, LEAVING THE PLAINTIFF AND THE OTHER INMATE WHO THREATENED HIM TOGETHER IN THIS SAME TREATMENT PROGRAM HOUSING UNIT, LEAVING THE PLAINTIFF IN A KNOWN DANGEROUS ENVIRONMENT AND IGNORED THEIR DUTY TO SAFEGAURD THE PLAINTIFF'S LIFE AND WELL BEING.

10.) AT APPROXIMATELY 7:30pm THAT SAME DATE AS THE THREAT ON 10/20/21 WHILE THE PLAINTIFF WAS WASHING HIS CLOTHS IN THE TREATMENT PROGRAM UNIT LAUNDRY ROOM, (INMATE FELIX AIVARADO WHO EARLIER MADE THE THREAT) CAME INTO THE LAUNDRY ROOM IN THE WITNESS OF INMATE (ROBERT AGUILAR) AND VICIOUSLY AND VIOLENTLY ATTACKED AND ASSAULTED THE PLAINTIFF ....

(9)

INMATE (FELIX ALVARDO) REPEATEDIY PUNCHED THE PLAINTIFF WITH A CLOSED FIST AND BEGAN SMASHING THE PLAINTIFF'S HEAD AGAINST A CONCRETE WALL THAT MOMENTARILY KNOCKED THE PLAINTIFF UNCONCIOUS AND SLUMP TO THE FLOOR, AS THE PLAINTIFF GOT UP OFF THE FLOOR HE TRIED TO BLOCK THE VIOLENT BEATING USING HIS ARMS TO DEFLECT THE PUNCHES OF HIS ATTACKER, UPON WHICH THE UNIT PRISON GAURD AND PRISON SECURITY STAFF CAME ON TO THE SCENE OF THE ATTACK, SEPARATED THE PLAINTIFF AND (FELIX ALVARDO - HIS ATTACKER) AND THEN PUT HAND CUFFS ON BOTH INMATES AND PLACED BOTH OF THEM IN "PUNITIVE SEGREGATION (SHU) CHARGING BOTH INMATES WITH A DISCIPLINARY OFFENSE FOR FIGHTING (EVEN THOUGH THE PLAINTIFF WAS THE VICTIM OF THE ATTACK) WHERE THE PLAINTIFF WAS ACTUALLY FOUND GUILTY BY A PRISON DISCIPLINARY HEARINGS OFFICER AND SPENT APPROXIMATELY 30 DAYS IN PUNITIVE ISOLATION SEGREGATION, AS THE (VICTIM OF THE ATTACK - NOT THE ATTACKER) SIMPLY FOR TRYING TO DEFLECT THE BEATING HE SUFFERED IN SIMPLE SELF DEFENSE, HOWEVER SUBSEQUENTLY THE WHOLE INCIDENT WAS FURTHER INVESTIGATED INCLUDING THE FACTS THAT THE PLAINTIFF WAS FORCED TO EXPOSE HIS ATTACKERS DRUG ACTIVITIES WITHIN THE TREATMENT PROGRAM UNIT, THAT THE PLAINTIFF REPORTED THE THREAT PREVIOUSLY MADE BY HIS ATTACKER, THAT NEITHER TREATMENT PROGRAM THERAPIST HAD REPORTED THE KNOW THREAT TO SECURITY STAFF AS REQUIRED, UPON WHICH PRISON OFFICIALS DISMISSED THE PLAINTIFF'S DISCIPLINARY INCIDENT REPORT AND OVERTURNED THE FINDING OF GUILT UPON DETERMINE THE PLAINTIFF WAS A VICTIM OF THE ASSAULT NOT A MUTUAL COMBATANT, BY AN INVESTIGATION OF THIS MATTER BY (DEFENDANT SIS LT. ROBINSON FACILITY SECURITY STAFF)

11.) IT IS A MATTER OF RECORD THAT THE PLAINTIFF REPORTED THE THREAT TO HIS SAFETY DIRECTIY TO (DEFENDANT DR. HALBSGUT, P.h.d.) IN THE COMPANY OF ALL (3) DRUG TREATMENT SPECIALIST-THERAPIST (MS. JAMES, MS. HAMLETT, MR. HARMAN) ON 10/20/2022 THE DATE THE THREAT WAS MADE...

(10)

WHERE UPON, THE NEXT DAY THE PLAINTIFF WAS INTERVIED BY THE PRISON'S INVESTIGATORS WHO ASKED THE PLAINTIFF "WHY WAS HE ATTACKED by INMATE (FELIX ALVARADO) UPON WHICH THE PLAINTIFF EXPLAINED THAT (DR. J. HAIBSGUT, P.h.D.) HAD ORDENED HIM To TELL ON FELIX ALVARADO FOR HIS DRUG ACTIVITIES AND THAT HE REPORTED THREATS AGAINST HIM BY INMATE FELIX ALVARDO BUT DR. HAIBSGUT, PhD DID NOTHING ABOUT THE THREAT, THAT ALL 3 OF THE PROGRAM THERAPIST KNEW OF THE THREAT WHEN IT WAS MADE BUT DID NOT REPORT IT, UPON WHICH PRISON SECURITY ESCORTED (DEFENDANT DR. J. HAIBSGUT, P.hD.) OFF THE PRISON'S PROPERTY AND PLACED UNDER SUSPENSION PENDING FURTHER INVESTIGATION.

12.) AFTER SPENDING 30 DAYS IN PUNITIVE ISOLATION - SEGREGATION EVEN THOUGH HE WAS THE VICTIM OF AN ATTACK, THE PLAINTIFF SPENT 2 MORE WEEKS IN COVID-19 QUARANTINE AND EVENTUALLY PLACED BACK IN THE (R.D.A.P.) TREATMENT PROGRAM (WHERE HE AWAITED FOR HIS TREATMENT TO RESUME) HOWEVER WHILE THE PLAINTIFF WAS PLACED BACK INTO THE TREATMENT PROGRAM, ON 1/20/2022 THE PLAINTIFF FILED A PRISON COMPLAINT/GRIEVANCE REGARDING THE MISCONDUCT OF (THE DEFENDANT DR. J. HAIBSGUT, P.h.D.) describing HOW SHE FORCED THE PLAINTIFF "TO TELL ON OTHER INMATES" THAT AS A RESULT THE PLAINTIFF WAS VIOLENTLY ATTACKED AND ASSAULTED AND HOW DR. HAIBSGUT AND OTHER TREATMENT STAFF WERE AWARE OF THE THREAT BUT DID NOTHING TO PREVENT IT (SEE EXHIBIT (A) )

13.) IN RESPONSE TO THE PLAINTIFF'S FORMAL COMPLAINT (ABOVE #12) AS TO (DEFENDANT DR. J. HAIBSGUT, P.h.D.) MISCONDUCT IN (EXHIBIT (A) ) ON 2/28/22 (DR. J. HAIBSGUT, P.h.D.) KEPT REPEATEDLY GOING INTO THE PLAINTIFF'S PRISON CELL "SEARCHING THE ROOM" (WHICH IS THE SOLE RESPONSIBILITY OF THE PRISON GAURDS OR SECURITY STAFF (NOT THERAPIST) WHILE CONDUCTING SUCH SEARCHES STATED "SHE WOULD FIND A REASON TO GET HIM OUT OF THE UNIT" "THAT SHE WILL FIND SOMETHING EVENTUALLY," THAT THE PLAINTIFF'S COMPLAINTS WILL NOT do ANY Good" "BECAUSE SHE HAS FRIENDS AT THE BUREAU OF PRISON'S REGIONAL OFFICE _ _ _ _

"THAT SHE WILL FIND SOME REASON TO TERMINATE HIS TREATMENT." UPON WHICH THE PLAINTIFF REPORTED SUCH MISCONDUCT TO PRISON OFFICIALS BOTH IN-PERSON AND BY ELECTRONIC PRISON EMAIL, TO DEFENDANT(S) (SIS LT, ROBINSON) AND (SIA OFFICER MULLINS) (SEE EXHIBIT(B)). BUT NOTHING WAS DONE.

14.) ON 03/1/22, IN RESPONSE TO NUMEROUS COMPLAINTS PLAINTIFF MADE ABOUT DR. HAIBSGUT'S MISCONDUCT, TO DEFENDANT(S) SIS LT, ROBINSON, SIA OFFICER MULLINS, ASST. WARDEN LINN, ASST. WARDEN FLOWERS, THE PLAINTIFF WAS INTERVIEWED BY CAPTAIN MARTIN (DEFENDANT CAPTAIN MARTIN) AND THE ENTIRE HISTORY OF DR. HAIBSGUT'S MISCONDUCT AND THE PLAINTIFF'S ASSAULT WERE THEN DISCUSSED AND ENDED WITH NO ACTION TAKEN AND THE PLAINTIFF WAS SENT BACK TO THE RDAP TREATMENT PROGRAM UNIT.

15.) ON THIS SAME DATE OF 03/1/2022, THE PLAINTIFF REPORTED YET ANOTHER DANGEROUS CONDITION AND THREAT TO INMATE SAFETY IN THE (RDAP) PROGRAM TREATMENT UNIT CREATED by (DEFENDANT DR. J, HAIBSGUT, P.h.D)'S UNETHICAL MISCONDUCT INCLUDING THOSE OF THE OTHER DRUG TREATMENT SPECIALIST "THERAPIST (MS. JAMES, MS. HAMLETT AND MR. HARMAN) IN WHICH THEY LOCKED DOWN THE TREATMENT PROGRAM UNIT, AND FORCED PRISONERS TO WALK AROUND AND POINT OUT OTHER INMATES WHO ARE SUSPECTED OF USING OR SELLING DRUGS AND FURTHER THREATENED THE PLAINTIFF THAT IF HE DID NOT COMPLY HE WOULD BE LOCKED UP IN SEGREGATION AND THOSE IDENTIFIED AS USING OR SELLING DRUGS WOULD HAVE THEIR ONE YEAR SENTENCE REDUCTION TAKEN FROM THEM, WHICH NEARLY CAUSED A RIOT IN THE TREATMENT PROGRAM UNIT UPON WHICH, ONCE AGAIN THE PLAINTIFF REPORTED THIS MISCONDUCT TO PRISON OFFICIALS IN AN ELECTRONIC EMAIL "TO (DEFENDANT SIS LT, ROBINSON) (SEE EXHIBIT(C)).

(12)

Case 5:23-ct-03044-FL    Document 1    Filed 02/13/23    Page 12 of 22

16.) IN RESPONSE TO THE PLAINTIFF'S ELECTRONIC EMAIL TO PRISON OFFICIALS (DESCRIBED IN PARAGRAPH #15 BY EXHIBIT-C-) PRISON OFFICIALS SPOKE TO THE TREATMENT PROGRAM STAFF ABOUT THE COMPLAINTS ABOUT THE SITUATION IN THE (RDAP) TREATMENT PROGRAM UNIT AS DESCRIBED IN PLAINTIFF'S EMAILS, UPON WHICH ON 03/02/2022 AT 11:55AM, THE PLAINTIFF SENT AN ELECTRONIC EMAIL TO THE (DEFENDANT ASST. WARDEN LINN) TO COMPLAIN AND INFORM PRISON OFFICIALS THAT (DEFENDANT DR. J. HALBSGUT, P. h.D.) ALONG WITH THE (RDAP) "DRUG TREATMENT SPECIALIST, DEFENDANT(S) (DTS, MS. JAMES) (DTS MS. HAMLETT) AND (DTS MR. HARMAN) CALLED A TREATMENT PROGRAM UNIT MEETING WITH ALL PRISONERS IN THE TREATMENT PROGRAM, AND ANNOUNCED A WARNING AND THREAT" "THAT IF ANY INMATE WENT TO OR TALKED TO PRISON OFFICIALS ABOUT ANYTHING THAT GOES ON IN THE (RDAP) PROGRAM UNIT THEY WOULD BE REMOVED AND TERMINATED FROM THE PROGRAM IMMEDIATELY", THE PLAINTIFF WAS THEN CONFRONTED BY (DEFENDANT DTS. MS. JAMES) WHO TOLD THE PLAINTIFF THAT PROGRAM STAFF KNOW ABOUT THE PLAINTIFF'S COMPLAINTS TO THE PRISON'S SECURITY STAFF, PRISON OFFICIALS, CAPTAIN AND ASSISTANT WARDENS. ( SEE EXHIBIT (D) )

17.) AGAIN THAT SAME DAY ON 03/02/2022 (DEFENDANT DR. HALBSGUT) SUMMONED THE PLAINTIFF TO HER OFFICE AND TERMINATED THE PLAINTIFF FROM THE (R.D.A.P.) TREATMENT PROGRAM IMMEDIATELY BY SPECIFICALLY POINTING TO PLAINTIFF'S COMPLAINT(S) IN EXHIBITS (A) (B) (C) (D) AND (E), TELLING THE PLAINTIFF TO "PACK-UP HIS BELONGINGS AND REPORT TO THE PRISON'S QUARANTINE SEGREGATION UNIT (ACTING ON HER REPEATED PREVIOUS THREATS), UPON WHICH THE PLAINTIFF WENT TO COMPLAIN TO HIS PRISON CORRECTIONS COUNSELOR WHO THEN SENT THE PLAINTIFF TO SPEAK TO THE (DEFENDANT SIS LT. ROBINSON) WHO ADVISED THE PLAINTIFF TO REPORT TO THE QUARANTINE UNIT, AND THAT "HE'll LOOK INTO THE MATTER," AND "TAKE CARE OF IT THE NEXT DAY".

(13)

18.) OVER THE PERIOD OF TIME BETWEEN JUNE 7TH 2021 WHEN THE PLAINTIFF ENTERED INTO THE (R.D.A.P.) TREATMENT PROGRAM UNTIL HE WAS TERMINATED BY THE (DEFENDANT DR. J. HALBSGUT, P.h.D) ON 03/2/2022, THE PLAINTIFF REPEATEDLY FILED COMPLAINTS AND RAISED CONCERNS WITH PRISON OFFICIALS ABOUT THE MISCONDUCT OF TREATMENT PROGRAM STAFF CREATING AN UNSAFE ENVIRONMENT, THREATS NOT TO SPEAK TO PRISON OFFICIALS ABOUT STAFF MISCONDUCT, FAILURE TO AND IGNORING THREATS OF VIOLENCE AND SPECIFIC THREATS AGAINST THIS PLAINTIFF, BUT PRISON OFFICIALS DID NOT TAKE ANY ACTIONS UNTIL IT WAS TOO LATE.

19.) ON 03/18/22, FOLLOWING THE PLAINTIFF'S TERMINATION FROM THE TREATMENT PROGRAM BACK ON 03/02/2022, VIOLENCE ERUPTED IN THE (R.D.A.P.) PROGRAM UNIT AGAIN DIRECTLY CAUSED BY AND ATTRIBUTED TO THE MISCONDUCT AND MISMANAGEMENT OF (DR. J. HALBSGUT, P.h.D,) WHERE AGAIN, FOR THE SECOND TIME, PRISON SECURITY STAFF ESCORTED HER OFF THE PROPERTY UNDER SUSPENSION FOR WHICH SHE WAS TERMINATED AS THE CLINICAL DIRECTOR-PROGRAM CO ORDINATOR AND NEVER RETURNED.

20.) ON ( MAY 12, 2022 ) THE PLAINTIFF WAS SEEN BY PRISON MENTAL HEALTH PROFESSIONALS OVER PSYCHOLOGICAL INJURIES RELATED TO THE VIOLENT ASSAULT HE SUFFERED ON 10/20/2021 IN THE (R.D.A.P.) TREATMENT PROGRAM UNIT, WITH SYMPTOMS WHICH INCLUDED INTRUSIVE THOUGHTS, FLASH BACK AND EMOTIONAL TRAUMA ASSOCIATED WITH HIS BEING VIOLENTLY ATTACKED AND DIAGNOSSED WITH "P.T.S.D." POST TRAUMATIC STRESS DISORDER, ANXIETY, DEPRESSION, PARANOIA AND SLEEP DEPRIVATION, AND PRESCRIBED PSYCHIATRIC MEDICATIONS, SUCH AS (TRAZADONE) AND (PROZAC)

( 14 )

21.) ON ( JULY 18, 2022 ) THE PLAINTIFF FILED THE REQUISITE STATUTORY "FEDERAL TORT CLAIM -"REQUEST FOR ADMINISTRATIVE REMEDY" PURSUANT TO 28 USCS §§ 2675 (A) AND §§ 2671.

( SEE ATTACHED EXHIBIT (H) ) ALONG WITH ANY RESPONSE FROM THE RELEVANT FEDERAL AGENCY :

## PLAINTIFF'S CLAIMS

### COUNT ONE

AS THE FACTS AND EVIDENCE SUPPORT, PURSUANT TO THE FEDERAL TORTS ACT 28 USCS §§ 2671, THE PLAINTIFF MAKES A CLAIM UPON THE UNITED STATES OF AMERICA VIA THE FEDERAL BUREAU OF PRISONS OF NEGLIGENCE "RESULTING IN PERSONAL INJURY BY A FEDERAL EMPLOYEE (DR. J. HAIBSGUT, P.h.d,) "CLINICAL DIRECTOR OF A TREATMENT PROGRAM (R.D.A.P.) AT THE FEDERAL CORRECTIONAL INSTITUTION, F.C.I. BUTNER 1 PO BOX 1000 BUTNER, NC. 27509, WHO BY HER ACTS OR OMISSION (S) CREATED" A PHYSICAL THREAT TO THE PLAINTIFF'S LIFE AND SAFETY, AND FURTHER BY HER FAILURE TO ACT UPON AN AFFIRMATIVE, DUTY, TRAINING AND WORK PLACE POLICY, FAILED TO ACT TO PREVENT A KNOWN THREAT TO THE PLAINTIFF PHYSICAL SAFETY, WHEREBY SAID FAILURE ACT OR OMISSION RESULTED IN A VIOLENT PHYSICAL ATTACK UPON THE PLAINTIFF RESULTING IN BOTH PHYSICAL AND EMOTIONAL INJURY FOR WHICH PLAINTIFF SEEKS [PUNITIVE DAMAGES OF $ 250,000.00] PROVIDED BY "MILLBROOK" 569 U.S. AT 53, QUOTING "UNITED STATES -V- MUNIZ" 374 U.S. 150-158, 83 S. Ct. 1859, 10 L.Ed. 2d 805 (1963), "PLUMMER-V-UNITED STATES" 580 F. 2d 72 ( 3 RD. CIR. 1978)  28 USCS §§ 1346 (B) (2), FURTHER QUOTING "QIN CHEN-V-UNITED STATES" 494 Fed. APPX. 108 (2 ND. CIR. 2012).

## COUNT TWO

AS THE FACTS AND EVIDENCE SUPPORT, PURSUANT TO THE FEDERAL TORTS ACT 28 USCS §§ 2671 AND INVOKING STATE PENDENT JURISDICTION, THE PLAINTIFF MAKES A CLAIM UPON THE UNITED STATES OF AMERICA VIA THE FEDERAL BUREAU OF PRISONS OF (PROFESSIONAL MALPRACTICE - PROFESSIONAL NEGLIGENCE) AS TO A FEDERAL EMPLOYEE (DR. J. HALBSGUT, P. h.D.) AS A "LICENSED PSYCHOLOGIST" AND IN HER CAPACITY AS THE "CLINICAL DIRECTOR" OF A TREATMENT PROGRAM (RDAP) AT THE FEDERAL CORRECTIONAL INSTITUTION, FCI BUTNER 1, P.O. BOX 1000, BUTNER 1, BUTNER, N.C. 27509, WHO BY UNETHICAL, UNPROFESSIONAL CONDUCT IN HER PRACTICE OF PSYCHOLOGICAL AND BEHAVIORAL TREATMENT OF THE PLAINTIFF, AND IN HER PROFESSIONAL CAPACITY ENGAGED IN PROFESSIONAL MALFEASANCE WHICH CREATED A KNOWN HOSTILE VIOLENT UNSAFE VOLATILE THERAPEUTIC ENVIRONMENT THAT RESULTED IN THE PLAINTIFF'S PHYSICAL AND EMOTIONAL INJURY, FOR WHICH THE PLAINTIFF SEEKS [PUNITIVE DAMAGES OF $250,000.00] WHERE "MALPRACTICE" BEFORE A FEDERAL COURT MAY EXERCISE STATE PENDENT JURISDICTION OVER STATE LAW CLAIMS BY PARTIES PROPERLY BEFORE IT 28 USCS §§ 2671, WHERE AS AT BAR THE FEDERAL AND STATE CLAIM DERIVE FROM A COMMON NUCLEUS OF THE OPERATIVE FACTS OF THE SAME UNDERLYING SUIT, SEE "UNITED MARINE WORKERS -V- GIBBS" 383 U.S. 715, 86 S.Ct. 1130, 16 L.ED. 2D. 218 (1966).

## COUNT THREE

AS THE FACTS AND EVIDENCE SUPPORT, THE PLAINTIFF MAKE CLAIM (S) PURSUANT TO 42 USCS §§ 1983 AGAINST A NAMED DEFENDANT ACTING UNDER COLOR OF LAW ON BEHALF OF OR UNDER HER AUTHORITY OF A FEDERAL GOVERNMENT AGENCY, THAT THE DEFENDANT (DR. J. HALBSGUT, P. h.D.) AS CLINICAL DIRECTOR OF A FEDERAL TREATMENT PROGRAM, WHILE ACTING IN HER OFFICIAL CAPACITY - - -

(16)

THE NAMED DEFENDANT IN HER OFFICIAL CAPACITY MADE A SERIES OF REPEATED AND SPECIFIC THREATS AGAINST THE PLAINTIFF FOR ASSERTING AND EXERCISING HIS FIRST AMENDMENT RIGHTS TO FILE OFFICIAL COMPLAINTS TO FEDERAL PRISON OFFICIALS OF THE U.S. DEPARTMENT OF JUSTICE OVER OR ABOUT THE DEFENDANT'S OWN OFFICIAL MISCONDUCT, AND THEN THE DEFENDANT FURTHER FOLLOWED THROUGH WITH AND ACTED ON HER THREATS, BY TERMINATING THE PLAINTIFF'S COURT ORDERED " PSYCHOLOGICAL TREATMENT WITHOUT CAUSE IN A RETALITORY ACT FOR OR IN RESPONSE TO PLAINTIFF'S LAWFUL LEGITIMATE AND SUBSEQUENTLY FOUNDED COMPLAINTS OVER THE DEFENDANT'S OFFICIAL MISCONDUCT, WHEREAS SUCH ACT TO TERMINATE THE PLAINTIFF'S TREATMENT CONSTITUTES AND PLAINTIFF RAISES CLAIM, OF AN 8TH AMENDMENT CLAIM OF THE deliberated INDIFFERENCE TO A KNOWN MEDICAL NEED TO WHIT (PSYCHOLOGICAL TREATMENT) ACTIONABLE UNDER 42 USCS $s_5$ 1983 by "LEAMER-V-FAUVER" 288 F. 3d. 532 (3rd. CIR. 2002), PLAINTIFF MAKES FURTHER CLAIM SUPPORTED BY THE FACTS AND EVIDENCE UNDER 42 USES $s_5$ 1983 THAT THE DEFENDANT IN HER OFFICIAL CAPACITY WAS ALSO deliberately INDIFFERENT TO A KNOWN RISK AND DANGER TO THE PLAINTIFF THAT SHE HERSELF CREATED SUCH RISK AND FAILED TO EXERCISE REASONABLE CARE TO PROTECT THE PLAINTIFF RESULTING IN A VIOLENT PHYSICAL ATTACK UPON THE PLAINTIFF THAT INFLICTED PSYSICAL AND EMOTIONAL INJURY AS A VIOLATION OF THE 8TH AMENDMENT FOR CRUEL AND UNUSUAL TREATMENT BY HER ACT OR FAILURE TO ACT, IN AN OTHERWISE RECKLESS CALOUS DISREGARD TO LIFE AND SAFETY AND A KNOWN RISK THAT WAS DETAILED SPECIFIC AND IMMINENT, AS WELL AS THE RESULT OF HER FAILURE TO FOLLOW PRISON POLICY, TRAINING AND SECURITY PROTOCALS, AS PROVIDED BY BIVENS", 403 U.S. AT 397, FARMER", 511 U.S. AT 842, FROM "READ-V-MCBRIDE" 178 F. 3d. 849, 852 (7TH CIR. 1999); WHEREAS PLAINTIFF [SEEKS PUNITIVE DAMAGES OF $250,000·00].

(17)

# COUNT FOUR

AS THE FACTS AND EVIDENCE SUPPORT, PURSUANT TO THE FEDERAL TORTS CLAIM ACT 28 USCS §, 2671, PLAINTIFF MAKES A CLAIM OR CLAIM (S) UPON THE UNITED STATES THROUGH THE FEDERAL BUREAU OF PRISONS OF THE "NEGLIGENCE" RESULTING IN PERSONAL INJURY BY (3) NAMED FEDERAL EMPLOYEE (S) WHO IN THEIR FEDERAL EMPLOYMENT AS (DTS MS. JAMES), (DTS MS. HAMLETT) AND (DTS MR. WARMAN) "DRUG TREATMENT SPECIALIST" OF THE (RDAP) TREATMENT PROGRAM AT THE FEDERAL CORRECTIONAL INSTITUTION, FCI BUTNER 1, P.O. BOX 1000 IN BUTNER N.C. 27509, ACTED WITH DIRECT NEGLIGENCE UNDER FEDERAL EMPLOYMENT BY THEIR INDIVIDUAL AND COLLECTIVE FAILURE TO ACT UPON A KNOWN DETAILED AND SPECIFIC PHYSICAL THREAT AND RISK TO THE PLAINTIFF'S SAFETY UNDER THEIR CARE AND SUPERVISION, AND BY THEIR FAILURE TO FOLLOW FEDERAL PRISON POLICY AND SECURITY PROTOCALS AND TRAINING, ACCORDINGLY THE UNITED STATES IS LIABLE FOR THE RESULTING PHYSICAL AND EMOTIONAL INJURY RESULTING FROM A VIOLENT PHYSICAL ASSAULT THAT THE FEDERAL EMPLOYEES HAD PRIOR KNOWLEDGE OF BUT FAILED TO ACT TO PREVENT THE PLAINTIFF'S INJURY (S). WHEREAS, THE PLAINTIFF SEEKS [PUNITIVE DAMAGES OF $ 50,000.00] AS TO EACH EMPLOYEE FOR A TOTAL OF ($ 150,000.00 PUNITIVE DAMAGES) PROVIDED BY "MILLBROOK", 569 U.S. AT 53 CITING "UNITED STATES - V- MUNIZ" 374 U.S. 150-158, 83 S.Ct. 1859, 10 L.Ed. 2d 805 (1963), "REED -V- MCBRIDE" 178 F. 3d 849, 852 (7ᵗʰ CIR. 1999) FARMER "511 U.S. AT 842, CITING "QIN CHEN -V- UNITED STATES" 494 FED. APPX. 108 (2ND CIR. 2012), "PLUMMER -V- UNITED STATES" 508 F, 2d. 72 (3RD CIR. 1978), "UNITED MARINE WORKERS -V- GIBBS" 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed. 2d. 218 (1966).

(18)

# COUNT FIVE

AS THE FACTS And EVIDENCE SUPPORT, THE PLAINTIFF MAKE A CLAIM OR CLAIMS PURSUANT TO 42 USCS §§ 1983, AGAINST 3 NAMED DEFENDANTS ACTING UNDER COLOR OF LAW (DTS MS. JAMES) (DTS MR. HARMAN) (DTS MS. HAMLETT) AS "DRUG TREATMENT SPECIALIST" OF A TREATMENT PROGRAM OF THE FEDERAL BUREAU OF PRISONS AT F.C.I. BUTNER I Po Box 1000 BUTNER, N.C. 27509 KNOWN AS (RDAP) WHO WHILE ACTING UNDER COLOR OF SHOW KNEW OF A DETAILED THREAT AND RISK TO PLAINTIFF'S LIFE, WHERE INFORMED OF SUCH THREAT, BUT FAILED TO EXERCISE REASONABLE CARE AND A DUTY TO ENSURE PLAINTIFF'S SAFETY, FAILED TO FOLLOW FEDERAL PRISON POLICY, SECURITY PROTOCALS AND THEIR TRAINING, WHICH RESULTED IN A VIOLENT PHYSICAL ATTACK AGAINST THE PLAINTIFF RESULTING IN PLAINTIFF'S PHYSICAL AND EMOTIONAL INJURY, THEREBY SAID 3 NAMED DEFENDANTS EXHIBITED A RECKLESS CALOUS INDIFFERENCE FOR THE PLAINTIFF'S RIGHT TO SAFETY despite KNOWLEDGE OF AN IMMENENT THREAT AND RISK TO LIFE AND SAFETY AS A VIOLATION OF THE 8TH AMENDMENT AGAINST CRUEL AND UNUSUAL PUNISHMENT AND deliBERATE INDIFFERENCE FOR WHICH PLAINTIFF SEEKS [ PUNITIVE DAMAGES OF $50,000.00 AS TO EACH OF THE 3 NAMED DEFENDANTS ] [FOR A AGGRIGATE TOTAL OF $150,000.00 PUNITIVE DAMAGES] ACTIONABLE AS deFined IN "BIVENS", 403 U.S. AT 397 "SANVILLE -V- McCAUGHTRY" 266 F.3D. 724-734 (7TH CIR 2001), FARMER" 511 US 842.

# COUNT SIX

AS THE FACTS AND EVIDENCE SUPPORT, PURSUANT TO THE FEDERAL TORTS CLAIM ACT 28 USCS §§ 2671, THE PLAINTIFF MAKES A CLAIM OR CLAIMS UPON THE UNITED STATES THROUGH THE FEDERAL BUREAU OF PRISON FOR THE (NEGLIGENCE) RESULTING IN PERSONAL INJURY BY 5 FEDERAL EMPLOYEES IDENTIFIED AS ...

(19)

(S.I.A OFFICER MULLINS), (S.I.S. Lt. Robinson), (Assistant Warden Linn), (Assistant Warden Flowers) and (Captain Martin) who were each repeatedly informed of Dangerous unsafe Conditions of a violent nature created by their Subordinates, and were also informed of and had Advance knowledge of a specific threat against the Plaintiff, but were negligent by their failure to act on the knowledge of said threat and/or unsafe conditions of Confinement which resulted in a violent physical attack against the Plaintiff. That then resulted in Plaintiff's physical and Emotional Injury, for which Plaintiff seeks [Punitive Damages as to each of 5 Individual Incidents of Negligence] (for a total of $250,000.00) Actionable under, "United States -V- Muniz" 374 U.S. 150-158, 83 S.Ct. 1859, 10 L.ED. 2D 805 (1963), "Millbrook", 569 U.S. at 53 "Plummer -V- United States" 580 F.2D. 72 (3RD. CIR. 1978), "Qin Chen - V- United States" 494 FRD. APPX. 106 (2ND CIR 2012), "Reed -V- McBride" 178 F.3D. 849-852 (7TH CIR. 1999).

## COUNT SEVEN

As the Facts and Evidence Support, the Plaintiff makes a Claim and or Claims, Pursuant to 42 USCS §§ 1983 as to (5) Named Defendant's acting under color of law, who by their Individual Reckless and Calous Indifference to a known threat to the Plaintiff's life and Safety by a known unsafe and Dangerous Prison Treatment Unit Environment Created by their Subordinate Employees under their direct Supervision, by their failure to act is the Proximate Cause of the Plaintiff's violent physical assault resulting in the Plaintiff's physical and Emotional Injury and Exhibited a deliberate Indifference to the Plaintiff's Safety since all 5 Defendants had Advance detailed knowledge of the threat to the Plaintiff's Safety as well as the unsafe Environmental Conditions but failed to act on that knowledge as an 8TH Amendment Claim of Cruel and Unusual Punishment by a deliberate Indifference Standard...

Case 5:23-ct-03044-FL    Document 1    Filed 02/13/23    Page 20 of 22

AND BY THEIR INDIVIDUAL FAILURE TO ACT WITH REASONABLE CARE, AND due diligence AND BY THEIR NEGLIGENT SUPERVISION OF THEIR SUBORNDINATES, THE PLAINTIFF WAS DENIED PSYCHOLOGICAL MEDICAL TREATMENT - MEDICAL CARE. BY HIS UNLAWFUL TERMINATION FROM A TREATMENT PROGRAM ORDERED by THE COURT AND PRISON OFFICIALS WHICH CONSTITUTES A DELIBERATE INDIFFERENCE TO A KNOWN MEDICAL NEED, AS A VIOLATION OF THE 8th AMENDMENT STANDARD. SAID CLAIM OR CLAIMS ARE HERE ASSIGNED TO ALL (5) DEFENDANT'S (S.I.A. OFFICER MULLINS) (SIS LT. ROBINSON), (ASSISTANT WARDEN LINN), (ASSISTANT WARDEN FLOWERS) AND (CAPTAIN MARTIN) FOR DELIBERATE INDIFFERENCE, NEGLIGENT SUPERVISION - RESPONDENT SUPERIOR, AS HELD IN, "SANVILLE - V - McCAUGHTRY" 266 F. 3D. 724 - 734 (7th CIR. 2001) AND "HILDEBRANDT - V - ILLINOIS Dept. OF NATURAL RESOURCES" 347 F. 3D. 1014 - 1039 (7th CIR 2003) "DONALD - V - COOK COUNTY SHERIFF'S DEPT." 95 F. 3D. 548 - 556 (7th CIR. 1996), "FARMER," 511. U.S. AT 842, See "McPHAUL - V - BOARD OF COMMISSIONERS OF MADISON COUNTY" 226 F. 3D. 558 (7th RIR. 2000) AND UNDER "CHAVEZ - V - ILLINOIS STATE POLICE" 251 F. 3D. 612 - 618 (7th CIR. 2001), AND AS TO "LEAMER - V - FAUVER" 288 F. 3D. 532 (3RD CIR 2002), BWENS", 403 U.S. AT 397. WHEREBY PLAINTIFF SEEKS [PUNITIVE DAMAGES OF $ 250,000.00].

       PLAINTIFF SEEKS TOTAL DAMAGES IN THE AMOUNT SUM CERTAIN OF ($1,550,000.00) AND SUCH FURTHER RELIEF SEEMS MEET AND JUST.

DATED: 2 - 6 - 23

BY THE PLAINTIFF, PRO CSE

DAKOTA WATERS
Reg. No
FCI BUTNER I
PO BOX 1000
BUTNER, NC. 27509 - 1000

(21)

## IX.   PLAINTIFF'S DECLARATION AND WARNING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.**

*Each Plaintiff must sign and date the complaint and provide prison identification number and prison address.*

2-6-23
_____
Dated

_Dakota Waters_
_____
Plaintiff's Signature

DAKOTA WATERS
_____
Printed Name

53973-074
_____
Prison Identification #

FCI BUTNER 1 PO Box 1000 BUTNER          N.C.        27509
Prison Address                    City              State      Zip Code